The Honorable Court, all rise. The Honorable, the United States Court of Appeals for the First Circuit, is now in session. All persons having any business before this Honorable Court may draw near, give their attendance, and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. You may be seated. Good morning, everyone. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is number 19-1927, 21-1957, 21-1958, Markham Concepts, Inc. et al. v. Hasbro and Beatrice Pardo et al. At this time, would Attorney Glazer come up to the podium and introduce herself on the record to begin? Good morning, Your Honors. Good morning. Patricia Glazer for B. Pardo, who is the executor of Mr. Klamer's estate. Before the filing of this lawsuit, before, in 1959, Mr. Markham submits an invoice to the Link Klamer Group, charging full salaries for Chambers and Israel. In 1989, this is all before the filing, Markham testifies a deposition that he, his wife, Chambers, and Israel all worked on the game. On October 2, 2015, the lawsuit is filed. After the filing, Chambers and Israel submit declarations where they explain that Chambers worked on the board. This is in December of 2015 and January of 2016. Thereafter, the termination claim is added to the lawsuit in January, late January of 2016. In May and June, June 1 to be precise, of 2017, Chambers and Israel are deposed. Both testify consistent with their declarations and explain that Chambers worked on the board and Israel worked on the packaging. Plaintiff's case we submit was unreasonable from the start. In light of the 1959 invoice and Markham's 89 deposition testimony, but at the very least, the plaintiff's case became unreasonable by either January 4, 2016, when the declarations were submitted. Counsel, excuse me. Let me, let me acknowledge to you that I feel in a somewhat awkward position in this case, and I don't know whether my colleagues might feel the same way. I mean, obviously, the three of us worked together on the decision in this case. As I reflect on that experience, I don't ever recall feeling that there was anything unreasonable about the claims that we were dealing with. They were serious claims. We, together, we worked very hard on the case. It didn't seem like a simple case. And so what I find, I almost find myself being, I'm like a witness, drawing on my own experience in working on the case. Now, I realize that the standard is the objective unreasonableness of the claims, but it's very difficult for me to dismiss the experience that I'm describing. I mean, there's no hint in the opinion that we thought we were dealing with anything frivolous or objectively unreasonable. So what am I supposed to do with that experience? Am I supposed to just cast it aside and say, well, I'm not, I'm not supposed to draw on that in weighing your arguments. So help me out with that. What am I supposed to do with that? I'm going to try to help you out. Two things. One, we believe that the court, district court, improperly weighed the Fogarty and Kurtzsang, I'm probably mispronouncing that, factors in abuse's discretion. And Your Honor, to be directly responsive, I think, a showing of frivolousness or bad faith is not required. The prevailing party only needs to show that the opponent's copyright claims were objectively weak. That's the law in the First Circuit and I think throughout the United States. As we point out in our briefs, federal courts throughout the country, including the Fifth and Sixth Circuits, have held that the grant of attorney's fees under Section 505 is a rule rather than the exception and should be awarded routinely. Well, we've never adopted that position, correct? You have not in any opinion that I was able to. Well, how do you reconcile that suggestion that the award should be routine or as I guess another circuit has held, there's sort of a presumption? That's the Seventh Circuit, you're right. Right, but how do you reconcile that with the statutory directive that it should, that it's a discretionary call? I mean, those formulations seem to be an unwarranted gloss on the statute. Respectfully, I don't think it's unwarranted at all. I think that indeed the other circuits, and you were correct, the Seventh Circuit has held that the prevailing party in Copyright Act litigation is presumptively entitled. That doesn't take away the discretion. You're observing abuse of discretion standard. It simply explains it in certain circumstances. And in this case, when the facts are what the facts were shown to be, early on in the litigation, they had no business filing to end the copyright, no termination rights whatsoever. We believe there is no question that the court in this case should be overruling the district court and sending it back on the fee issue. May I continue briefly? I know your time is up. Thank you. Plaintiffs had to prove that Markham created. I'm sorry counsel, your time has expired. I'm sorry? Your time has expired. My time has expired? Yes. I guess I will sit down then. I have a few more remarks to make, but I will hopefully have my colleague make those for me. Thank you. Thank you. At this time, would Attorney Krumholz come to the podium and introduce himself on the record to begin? Good morning, Your Honors. Josh Krumholz for Hasbro. Good morning. I'd like to reserve two minutes. You may. Thank you. To address your question directly, I think this panel is struggling, or at least you are struggling with the same thing that Judge Smith struggled with below, which is his decision was limited in scope. He looked only at the work for hire issue with regard to Mr. Markham doing the work for hire for Mr. Klamer. Therefore, your review was limited in scope looking at that same question. But what we asked the court to do below, and it did not do, was look at the totality of the arguments and the totality of the issues, because I think once you do that, you find that there was no path for their success. So, for instance, if we look at, we divide objective reasonableness by legal and factual. Legally, there is a procedural problem that they never address at all, which is they ask the district court to ignore clear First Circuit precedent, and then they ask this panel to overturn a prior panel without any, based on a case that that prior panel had considered. So procedurally, they never even get out of the block. They were never going to be able to argue that. Counsel, even on, I mean, I will acknowledge, I think you make a fair point. That was probably the part of the case that struck me as the greatest reach. But even there, they did have an argument that there was a precedent of the Supreme Court that might, should alter that view. Now, there was a timing issue with that argument, right? Because our precedent came after that decision in the Supreme Court, right? So that was a problem for them. But, I mean, they did have an argument that maybe we should take a look at the way in which that Supreme Court decision had altered the law, right? Yes. But I think, respectfully, it was more of a timing problem. That forward case, that panel cited the Reid case three times. That's correct. So to us, that was more than, you know, an ask. That was a reach that was inconsistent with San Juan and this Court's clear precedent. Forward cited the Reid case, but the argument made by the plaintiff is that the issues that were raised in that case were different from the issues raised here. Well, except it wasn't from the extent that that Court had to decide whether to apply the instance of expense test and did in the face of having read and understood Reid. So, and I think that's what this Court held, that this panel held, was that it was an essential issue that that panel had to have considered before rendering its decision. So we do think there is that procedural problem, but there are other major substantive problems. And we go through in the brief, and the Court is familiar with the reasons why Reid should never have been applied to the 1909 Act. But the part that this panel did not need to reach, nor did the district court have to reach, is that even if the reasoning of Reid were to apply, even if we accept their argument, the reasoning would be that the common law definition of employer in 1909 Act should be applied. Right? That's the only competent application. We cite in our opening brief and our reply brief dozens of cases that establish that employer in 1909 included independent contractors. It was not an agency relationship. It was much broader than that. They never did that research. They never did their homework to establish, and if they had, they would have found out that even if Reid applied, the agency test still would not have replaced the instance of expense test based upon the rationale of Reid. Your argument, as I follow it, is that it was an objectively unreasonable claim to be asserted, but we said in the airframe that finding that it's objectively unreasonable justifies an award of fees, but does not require it. And it's that last part of the airframe holding that seems to present a problem for you that I'm not seeing what the answer is. When we find that it doesn't require it, it allows us to say, well, even if you're right that it was objectively reasonable, it doesn't follow that that's an abuse of discretion. I agree with all of that. But if we go back to the abuse of discretion standard and we go back to the fogety factors, and I'd like to come back to objective reasonableness, when we look at the fogety factors, we're also supposed to be looking at deterrence, compensation, motivation. And if we look at the abuse of discretion standard, one of the factors is whether or not the district court ignored a material factor. It ignored motivation entirely. Sorry, it ignored compensation entirely. And compensation matters a lot here because, you know, you have small justice on the one hand and airframe on the other. Right? Small justice, one of the factors in favor of awarding fees was that that case lasted a long time, which I think was two years, as opposed to airframe, which was quickly resolved. Here we're working up to our seventh year, including a full-on brief to the Supreme Court. So, you know, compensation is a material factor because the case law makes clear that in preserving the interest of the Copyright Act, both sides, plaintiffs and defendants, have the right to pursue their legitimate claims. Right? And here it's particularly problematic because while the court said that, you know, on deterrence and motivation, the court, I think, had two sentences. And Judge Smith, there's no judge in the country I have more respect for than Judge Smith. But on this, but we're not all perfect, and on this one, I just don't think he got it right because on the motivation, they told us in their brief what their motivation was. Their motivation is they've had a decades-long grudge with Mr. Klamer, and they wanted to get bragging rights on ownership, on authorship. They were upset because they didn't like how Mr. Klamer treated Mr. Markham's widow. These things are not motivations that 304C are designed to enhance. And the consequence that has been- too cheaply and feel they're entitled to more money. There's a doctrine that, if you will, sanctions that very motivation. So why should it be held against Markham and his heirs that they feel they did not get their due reward, given the extraordinary success of this game? Why is that an improper motivation? That would be entirely proper if that was their motivation. But that's not the motivation that they articulate. They articulate on pages 21 and 23 of their brief that they continue to wage this war against Klamer because Mr. Klamer mistreated Mr. Markham's widow, because they wanted bragging rights as to who created the game, and because they wanted to separate themselves from Mr. Klamer. And we consciously put in the record the fact that they got a very good deal. They're still getting a lot of money, and they have renegotiated several times over the decades without having to bring in 304C. I know we can argue about whether it's a good deal or not, but the reality is they are still making millions of dollars. How do you reconcile the claim being made now that their position was, if not frivolous, borderline frivolous, certainly objectively unreasonable, with the briefing that was then presented to us on the merits case, which we're now told a half million dollars was spent on briefing the issue? There seems to be some tension there between saying this was a frivolous case from the get-go. Even once we won it below, it was really frivolous, and yet we had to spend huge efforts to handle the appeal. Well, we were a quarter of a million. We were $270,000, not half a million. Well, but the two combined. Well, there were separate defendants. Well, was there a conflict of interest between the defendants? There was the potential for a conflict of interest, yes. What was it? Well, when we were first engaged, we didn't know what role— No, but after you won below, what was the conflict of interest on appeal? Well, at that point, there was separate counsel that had gone down their own paths. We had—I mean, for us, the motivation and compensation factors are very different. I mean, part of the problem here for us is that Hasbro feels like an innocent bystander in what was a decades-long dispute going on, right? And to what extent—I'm not saying Mr. Klamer did anything wrong, but to what extent Mr. Klamer contributed to that decades-long battle was not our problem or our cause. We just ended up in this lawsuit because the consequence of 304C was that we would lose copyright rights. So we had to invest time and money to do that, and I understand that that costs a good amount of money. I would make two observations. One is the stakes were high, right? And even if we're sure that we're right, you have to do a good job. You can't lose your copyright to one of your most successful brands ever. And two, respectfully, you expect a high standard, and that just takes time. I mean, that's just the reality. We're going to do our job properly for you. If I may turn back to the objective unreasonableness. You reserved some time in rebuttal, unless my colleagues have any additional questions. Is that it? Yes. Okay. I have 124. Is that where it passed? Pardon me? Yes. Okay. Thank you. I'll save that for rebuttal. At this time, would Attorney Cole please come to the podium and introduce himself on the record to begin? Good morning, Your Honors. My name is David Cole. I will be arguing on behalf of Appalese, the Markhams. Good morning. Unless there's any specific topic Your Honors would like to begin with, I would like to address first the standard in this case, which is the abuse of discretion standard. Appellants argue that the district courts — Is that the standard for the appellate fees? It is not the standard for the appellate fees. However, it is related in the sense that the decision made by the district court in the district court decision, many of the factors will be the same for the appellate-level fees as well. The issues of motivations of the party, whether — No, the standard is the same. The standard on the merits is the same, but the standard of review is different. That is correct, Your Honor, and both decisions should rise and fall together. Motivation, deterrence, compensation, all of these factors would apply to both motions at the appellate level and at the district court level. But speaking to the district court fees, appellants argue that the district court's well-informed decision may be nevertheless reversed because it made a serious mistake in weighing the fogarty factors. But there is no evidence to back this up. The district court properly stated that objective reasonableness is to be given substantial weight, but that no single factor is controlling. That is the proper weight of the fogarty factors under the case law, and therefore there was no mistake in weighing the factors, much less a serious mistake in weighing the factors. What appellants are in fact seeking is a de novo review of the court's decision to have another court substitute its discretion for the discretion of the district court. But because the district court properly considered the fogarty factors and properly weighed them, there was no abuse of discretion here. Counsel, I would like you to acknowledge, I thought it was the part of your case that was most troubling, that is the refusal to acknowledge the force of our precedent in the forward case. As the opposing counsel has pointed out, and I don't think you even acknowledge this, that the panel in that case acknowledged the Reid decision, went on to apply the instance and expense test, and you were basically asking us to do what we can't do, which is to disregard a precedent. So it seems to me it's a fair point that you really did not engage with that almost insurmountable procedural hurdle in pursuing the argument that you did. How does that not rise to a standard of objective unreasonableness, given the force of the principle we can't disregard the precedent of a prior panel? Well, I think we would have two responses to that, Your Honor. But before I answer, just as a quick overall note, objective reasonableness and these arguments, although appellants focus on Reid and whether the instance and expense test should apply, whether the agency test should apply, Appellee's case was far broader, covering both claims of authorship for Bill Markham and termination rights both under the instance and expense test and under the Reid. So in response to Your Honor's question, there were two main arguments of why this panel could have made a decision otherwise, even despite forward. First, as appellees argued, forward was not binding precedent on the specific issue of whether Reid was in conflict with the instance and expense test. Although the court cited the decision three times, none of the parties did in their briefing. Reid is not cited by a single time in any party in their briefing, and both parties apply the instance and expense test. Neither party challenged it in the case. And therefore, it was reasonable to say that forward was not binding precedent on the specific issue of whether CCMB was in conflict. And second, Your Honor, we would say that even if forward did apply and was binding precedent, appellees had multiple reasonable arguments under the instance and expense test as to why Mr. Klamer could not be considered an employer and therefore why termination rights should exist. And therefore, as my learned friend said, looking at the totality of the arguments, appellees' arguments as a whole were reasonable for the termination rights issue. Well, his argument is that you completely ignored that independent contractors under the 1906 were considered employees. I don't think we have ignored that, Your Honor. It was briefed in our merits briefing, and certainly in our brief to the Supreme Court, we talked about the history of the act. But ultimately, what Reid said was as a matter of statutory interpretation, words like employee should be treated a certain way. And in saying that, it's cited to cases not in the Copyright Act, but the cases in the FELA, for example. And so these issues of statutory interpretation, we felt, should apply to all acts. Whether or not that was accepted was reasonable or not, but the issue was the actual argument against forward is reasonable. And even setting that aside, if that argument was lost, there were multiple other reasonable arguments as to why Mr. Klamer still could not be considered an employer. Mr. Colwell, as I read the district judge Smith's decision on the fee request, one of the points he made was that until he made his factual findings, particularly regarding the claims of Israel, you had a leg to stand on. But the negative inference of that is that once he made a factual finding, in fact, I think he made a factual finding that based on that testimony, Markham had essentially nothing to do with either the board or the cover. Given that factual finding, was it then reasonable to continue to litigate, i.e., to defend the, to attack the decision on appeal? It was reasonable, Your Honor. How were you going to get, we never quite got to the full alternative argument, but what would your defense have been? That it was an error of fact for the judge to believe the testimony of those two witnesses? That's correct, Your Honor. Appellees argued that it was clear error to make those findings. And why would that be? It was a credibility finding by the trial judge in a jury way of trial. As one example, Your Honor, one of the three registrations in this game is for the cover of the game of life. Now, Mr. Israel testified that he created sketches, which were then used to ultimately create the cover. However, he testified that he did not personally create the actual cover of the prototype. Ms. Chambers testified that she did not create the actual cover of the prototype. There was no evidence that any other individual, and only four individuals were involved in the creation of the game, created the cover of the prototype. And it was therefore error, and clear error, for the district court, appellees argued, for the district court to have found that Mr. Israel created the cover despite the clear testimony saying that he did not do so. But that seems to just get you from them doing it to we don't know who did it, which doesn't get you to where you need to go, which is that Markham did it. It's unfortunate that Mr. Markham passed away before the case happened and could not testify on his own behalf. But there was still evidence that supported Bill Markham being the sole author. Only four individuals were involved in the creation of the game at all, Mr. Markham and his employees. And therefore, as an initial note, as an appellee's claim of authorship for Bill Markham, that was certainly a reasonable argument, whether under a work-for-hire doctrine or otherwise, there was a reasonable argument to be made that Bill Markham should have been the author of the game of life. But even setting that aside, there was evidence that he, for example, was responsible for creating the iconic spinner of the game. There was evidence that he created the unique double-fold feature in the game board that allowed the board to fold despite the presence of 3-D elements. Ms. Chambers, in contrast, could not describe how the board was created, how it was bound together, how the different pieces were made to slot together. And therefore, there was a substantial amount of circumstantial evidence that Bill Markham was intimately involved, that knew details about the specific creation of the board, the cover, and the rules, that those employees could not testify about, although those employees were able to testify. And therefore, it was reasonable to argue to the district court that Bill Markham was the sole author of the game. And once the witness's testimony came in, that they could not be considered to be, have made original contributions to the game, because by their own testimony, they were not involved in the actual prototype. Appellees certainly do not dispute that those employees were involved in the creation of the game as a whole, but there's a substantial difference in the copyright laws between making an original contribution to the actual work in question versus doing something like making models that can then be used to create the work, or making sketches that can then be used to create a work. I believe Mr. Krumholz has mentioned, if I heard him correctly, that a cert petition has been filed. A cert petition was filed, Your Honor, and several amicus briefs were filed all in support of Appellee's position. That petition, like so many other cert petitions, has been denied since then. And by appellees, you mean appellees in this action? Yes, the amicus briefs all signed on in support of the Markham parties. Counsel, what did the district court say in its decision on the motivation factor, which is one of the Fogarty factors? What did it say about motivation? The district court properly weighed the factors, noting first objective reasonableness was entitled to substantial weight, but then it did go through the remainder of the factors, including motivation. What it found was that there was no evidence of improper motivation in this case. Now, Mr. Krumholz has argued that there was not a significant analysis of that particular factor, but the answer to that is there is nothing to do analysis on. I'm paging back. What did the district court say about motivation? The district court said there was no evidence of any improper motivation in this case. And that was it? That's all it said? That was it because there was no other arguments raised. There's no other evidence or testimony in the record towards any improper motivation. There is, frankly, nothing else to say. How do you respond to what counsel said about motivation today in oral argument? I would say first that there is a difference between motivations that might be improper to a layperson casually and motivations that are improper under the Copyright Act for termination rights. Looking to tear up a contract that may or may not have been fair might seem unfair to Hasbro, but it is the exact purpose of termination rights. There's no evidence that the Markhams were seeking higher royalties. That's mere conjecture. There's no evidence that the Markhams were seeking to separate themselves from Klamer, but either of those would have been acceptable motivations under the case, even if they kept the same royalties and said, we just want to be contractually separated from the other parties. That would have been acceptable. In fact, if the Markhams had received 100% of the royalties in the world's greatest deal of all time and they had termination rights, they would still properly be bringing a case to determine if they had termination rights. But they're saying this was a grudge that Mr. Markham felt that he had never received due credit for all the work that he did, that Mr. Klamer had always treated this as really his creation and Markham's contribution was really minimal. Is pursuing this expensive litigation to carry out a grudge, is that a proper motivation? If Your Honor is asking, is there a proper motivation when two parties dispute their rights under the Copyright Act to bring a litigation to determine those rights, yes, Your Honor, that is an exactly proper motivation and in furtherance of the Copyright Act. So what's an example of improper motivation in one of these suits? There are several examples that have been brought up of improper motivation and those are a stark contrast to the motivations here. For example, where one company files a case against another company for an anti-competitive effect or where a party files a lawsuit and then seeks publicity from the filing of that lawsuit. If there is something separate from the actual issues in the lawsuit, in this case the determination of rights, that might be an improper motivation. But to determine a party's rights under the Copyright Act is not an improper motivation, Your Honor. So the district court said that there was not evidence of improper motivation. Did the district court say enough for us to be able to understand its reasoning on that factor? Yes, Your Honor, on two notes on that. First, because the district court properly followed the Fogarty factors and did weigh them all correctly, that is the end of the inquiry. It properly exercised its discretion and there's no further need of whether its analysis under any particular factor was, in the opinion of this panel, correct or not. But second, even looking at its statements under the motivation factor, it did say that it considered the party's arguments and the party's evidence and stated definitively that there was no evidence of improper motivation in this case. There's no need to go through each of Appellant's arguments and state why each of them was incorrect. It did ultimately consider their arguments and found that there was no improper motivation here. Was there enough presented to the district court for us to conclude on the record before us that these arguments were made below? Both sides certainly briefed the issue and argued the issue. Appellees would argue there was not much evidence presented below because there is, frankly, no evidence of improper motivation to present in this case. And that's why Appellants have had to focus instead on theories of seeking to use termination rights somehow being improper. There's just no evidence of any other improper motivation and as a result the district court had nothing else to discuss in its analysis there. On a similar point, on the deterrent point, the district court similarly found that there was no need, that an award of fees would not create a deterrent in effect in this case that would further the purposes of the Copyright Act. That decision was similarly well reasoned given that this has been the only copyright case between the parties, given that the termination rights window has already closed, and given that this case has resolved all the work for higher issues. Therefore, there's no deterrent effect in this case either, which the district court similarly dealt with summarily. Is there any room in the analysis in a case like this considering hardship to the losing party here? I mean, we're talking about, these are big dollars. This is a lot of money we're talking about for attorney's fees. The point has been made that your clients are still doing very well, even under the existing agreement, but there is, I think, a suggestion in your briefs that there would be something unfair, an undue hardship. On one side, you have a large, large corporation that is seeking fees, and here you have the descendants of Mr. Markham. There's a suggestion of unfairness in that. Is that a proper element to consider here? It is, Your Honor. Compensation certainly cuts both ways. Hasbro is a large company that has had to spend some money litigating this case. It has been hard fought throughout. It is certainly far from frivolous. But to the same token, the individuals who represent Apelles, the widow and adopted child of Bill Markham, regardless of the amount of money they're making, $5 million is going to be a substantial hit to them. And the purpose of the Copyright Act is not financial ruin or even financial pain just for the sake of pain. It's got to further the Copyright Act in some way for it to be justified under the Copyright Act. And if I can make a note, I know that I have only a short amount of time left. An award of fees also as a policy matter would be devastating here. For Hasbro to challenge to try to obtain $5 million from individuals who are trying to determine their rights under the Copyright Act would send a clear message to any other potential plaintiffs, any other artists that might ever seek to challenge publisher, that they risk financial ruin in a case in which they did not even seek monetary damages. They sought only the declaration of their rights. I see my time is up, so unless there are any other further questions I can answer, thank you very much for your consideration. Thank you. Thank you. Thank you. At this time, will Attorney Krumholtz please come to the podium and reintroduce himself back on the record to begin. You have a two-minute rebuttal, sir. Thank you. Josh Krumholtz for Hasbro. Dealing with your last question first, the Zamowski case, which was a District of Mass case, you know, set forth the proposition, which was not later disputed, that impecuniousness is not an excuse, cannot be used as an excuse for the consequences of a lawsuit. But beyond that, there was no evidence in the record of impecuniousness on their part. In fact, the record shows that they have done and continue to do very well. Speaking for Mr. Klamer, I know he had to take out a mortgage to pay for his fees here. And Hasbro, yes, it's a large company. Of course, it can afford to pay, but it doesn't mean it should be obligated to pay. Could you better describe what have done very well means? I think it's certainly more than a million dollars a year. I'm a little nervous about making that representation. It's something in that neighborhood, but I can't tell you what's enough specificity to be comfortable. But it's in that neighborhood. So to the Court's questions on the standard, it is a different standard. I think this Court needs to look at the motion separately from the abuse of discretion standard, and as Your Honor has observed, whether or not it was reasonable to be going forward at that point with the appeal in light of the factual findings and in light of their legal posture, procedural issues and substantive issues. To your question, the Court did not do any motivation analysis at all and gave no indication as to why he believed that there was proper motivation or an absence of improper motivation, and really paid and didn't even mention compensation, didn't even raise it at all. And that has the issues that I talked about earlier. Should we consider at all that the amicus on this third petition were in support of the appellant? I respectfully say no. That's actually what I was going to bring up. The reason not is because you have to look at who the amici were. Nimmer was not an amici. Pinktree was not an amici. There is no commentator, there is no academic that provided any amicus brief. The only people that provided amicus briefs were amici that stood to profit financially if the Court overturned forward. So it was just more people, it was artists and others who, you know, want to change the law because they have a financial interest. They're situated no differently than the plaintiffs were in this case. Normally when amici have a force, it's because they have an independent view of getting the law right. That does not exist with any of these amici. Thank you.